# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 3, 2010

No. 09-10713

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JEREMY ALEXANDER GONCALVES,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before KING, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM:

Defendant Jeremy Alexander Goncalves appeals his sentence of thirty-three months' incarceration for his convictions of passing counterfeit notes and for using a falsely altered military discharge certificate. Goncalves argues that the district court miscalculated his sentence under the United States Sentencing Commission Guidelines Manual (the "Guidelines" or "U.S.S.G."). For the following reasons, we AFFIRM the district court's sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2007, Goncalves received a bad-conduct discharge from the United States Army. After his discharge, Goncalves returned to his hometown

of Ludlow, Massachusetts, where he applied for work with Bell Helicopter. Bell is located in Hurst, Texas. As part of his application, Goncalves emailed Bell an altered copy of his certificate of discharge from the Army. In the certificate of discharge, Goncalves indicated that he received an honorable discharge from the Army, served in special forces for over two years, and last held the rank of captain. All of these assertions were false. Goncalves also fraudulently represented to Bell in accompanying documents that he had graduated from the University of Massachusetts and was currently employed with Northeast Utilities.

Based on Goncalves's representations, Bell hired Goncalves, paying for him and his family to move to Texas. Goncalves began work for Bell in May 2008. However, as part of its own hiring investigation, Bell subsequently learned that Goncalves had fraudulently altered his certificate of discharge from the Army and lied about his educational and work background. Bell terminated Goncalves in June 2008.

In August 2008, Goncalves attempted to purchase a dirt bike through the Internet from Wilfredo Mendieta for $2,100. When Goncalves and Mendieta met for the purchase, Goncalves handed Mendieta what appeared to be twenty-one $100 bills. However, Mendieta later told authorities that he thought that the bills "felt funny," so he had them inspected with a counterfeit detection pen. Some of the bills were revealed to be counterfeit. Mendieta turned the bills over to police, where the bills were conclusively identified as counterfeit federal reserve notes, many bearing the same serial number.

Texas state police officers subsequently identified Goncalves as the purchaser of the dirt bike and arrested him. After his arrest, Goncalves admitted to the officers that he had used counterfeit notes to purchase the dirt bike from Mendieta. Goncalves further stated that he had entered into an arrangement with a Nigerian man in France whom Goncalves had met on the

Internet. According to Goncalves, the Nigerian man had agreed to send Goncalves counterfeit notes that he would first use to make purchases of items, and that he would then sell at a profit. The scheme then involved Goncalves sending the Nigerian man thirty percent of any profits earned from the scheme. Goncalves later stated to federal officials that he had received a package in the mail containing the fraudulent notes that he used to purchase the dirt bike.

Federal officials performed a note history on the counterfeit bills used in Goncalves's fraudulent purchase of the dirt bike. The note history revealed that someone had used an additional twenty $100 counterfeit bills with the same serial numbers to purchase a home-theater system from Circuit City. A subsequent investigation revealed that Goncalves had used the additional fraudulent bills to purchase the home-theater system.

Goncalves pleaded guilty in federal court to one count of Uttering Counterfeit Obligations of the United States, in violation of § 18 U.S.C. § 472, and one count of Using Falsely Altered Military Discharge Certificate, in violation of 18 U.S.C. §§ 498 & 2. Prior to sentencing, a United States Probation Officer submitted a Presentence Report (PSR), which calculated that Goncalves's Guidelines range of imprisonment was twenty-seven to thirty-three months.

Goncalves objected to the recommended Guidelines sentence calculation in the PSR. First, Goncalves argued that his offenses should have been grouped pursuant to U.S.S.G. § 3D1.2(d), which allows for grouping of offenses that "involve substantially the same harm." Such a grouping would have resulted in a two-level reduction in his Guidelines sentence. Goncalves also argued that the PSR improperly applied § 2B5.1(b)(5), which applies a two-level enhancement if any conduct relevant to the offense occurred outside the United States. The district court overruled both objections and sentenced Goncalves to thirty-three months' incarceration, which was at the top of the calculated Guidelines range.

Goncalves now appeals his sentence and reiterates the objections he made at sentencing.

## II.  STANDARD OF REVIEW

We review a district court's sentencing decision for abuse of discretion. *See United States v. Harris*, 597 F.3d 242, 250 (5th Cir. 2010).  For properly preserved claims, we review the court's application and interpretation of the Guidelines de novo. *See United States v. Rodriguez*, 602 F.3d 346, 362 (5th Cir. 2010).  A district court's factual findings, which we review for clear error, must be supported by a preponderance of the evidence. *See id.*  "'A factual finding is not clearly erroneous as long as it is plausible in light of the record read as a whole.'"  *United States v. McMillan*, 600 F.3d 434, 457-58 (5th Cir. 2010) (quoting *United States v. Krenning*, 93 F.3d 1257, 1269 (5th Cir. 1996)).

## III.  DISCUSSION

### A.  No Error for Not Grouping the Offenses under § 3D1.2(d)

Goncalves first argues that the district court erred by failing to group his two convictions under U.S.S.G. § 3D1.2.  Specifically, Goncalves argues that because § 3D1.2(d) lists both of the crimes for which he was convicted in a list of offenses "to be grouped," the court erred in finding that the Guideline did not apply.

Section 3D1.2 states that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group."  The section then sets forth four different categories of offenses that "involve substantially the same harm within the meaning of this rule."  The only such category at issue here is that contained in subsection (d), which applies in the following circumstance:

> When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

*Id.*[1]  Subsection (d) further sets forth three categories of Guidelines that cover certain offenses and how those offenses are treated under § 3D1.2(d).  The first category lists Guidelines covering offenses that "are to be grouped" under the subsection.  *Id.*  The second category lists Guidelines covering offenses that are specifically excluded from grouping under the subsection.  Finally, the third category states that multiple counts of unlisted offenses must be determined on a case-by-case basis.  *Id.*; *see also United States v. Salter*, 241 F.3d 392, 394 (5th Cir. 2001).

The Guidelines covering Goncalves's two offenses are found on the same line of the first category of § 3D1.2(d).  Because § 3D1.2(d) states that offenses in this list "are to be grouped" under the subsection, Goncalves argues that a per se rule exists regarding their grouping.  However, we have held that "grouping is not mandatory or automatic simply because a defendant is charged with an offense that falls under a guideline listed in § 3D1.2(d)." *United States v. Lopez–Urbina*, 434 F.3d 750, 763 (5th Cir. 2005) (citing *United States v. Solis*,

---

[1] In relevant part, the Guideline provides as follows:

All counts involving substantially the same harm shall be grouped together into a single Group.  Counts involve substantially the same harm within the meaning of this rule:

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2.

No. 09-10713

299 F.3d 420, 459–60 (5th Cir. 2002)).  Rather, an offense covered by a Guideline in the first category is only "susceptible to grouping under that subsection." *Id.* No per se rule exists.[2]

When deciding what criteria to consider when determining whether grouping is appropriate under the first category of offenses in § 3D1.2(d), we look to the Guideline's Commentary.  *See United States v. Patterson*, 962 F.2d 409, 416 (5th Cir. 1992).  Application Note 6 of the Commentary states that "[c]ounts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection."  U.S.S.G. § 3D1.2 cmt. n.6.  The Application Note further states that "[t]he 'same general type' of offense is to be construed broadly."  *Id.*

Goncalves argues that his offenses are of the "same general type" because they are both acts of fraud and involve economic loss.  However, these similarities alone are insufficient.  *See, e.g.*, *United States v. Brisson*, 448 F.3d 989, 992 (7th Cir. 2006) (convictions for bank fraud and fraud against the United States were not "of the same general type" simply because they were "economic offenses arising out of the failed ownership of the hotel").  Furthermore, such similarities are all that exist between the two offenses.  One of the offenses for which Goncalves was convicted took place in August 2008 and involved the purchase of private property with counterfeit bills.  The other offense took place in May 2007 and involved the alteration of a military certificate of discharge in order to deceive a company into hiring him.  The crimes involve different

---

[2] Goncalves switches course in his reply brief and argues that his position is not for a per se rule under § 3D1.2(d), but that the district court erred by not considering § 3D1.2 at all. However, this new position is belied by the language in his original appellate brief arguing that § 3D1.2(d) sets forth a per se rule.  It is also belied by the paragraph of the PSR to which Goncalves specifically objected before the district court, which discusses § 3D1.2 in detail and concludes that grouping is inappropriate.

schemes, different objectives, and different victims, and they took place at different times.  They are thus not of the "the same general type."  *See United States v. Ballard*, 919 F.2d 255, 257 (5th Cir. 1990) (finding no error when the district court did not group two crimes falling under the same enumerated Guideline in § 3D1.2(d) when the crime involved two separate victims, two separate vehicles, and two separate events); *Brisson*, 448 F.3d at 992 (offenses not of the same general type under § 3D1.2(d) when they involved, inter alia, different victims).

Finally, even if the two offenses were "of the same general type," a review of Goncalves's PSR demonstrates that the offense level for either crime was not "determined largely on the basis of the total amount of harm or loss."  U.S.S.G. § 3D1.2(d).  The PSR recommended only a one-level increase for the amount in question for Goncalves's counterfeiting conviction, and the amount of harm or loss was not at issue for his material alteration offense except to calculate restitution.  In addition, Goncalves has not shown that his offense level has been calculated pursuant to Guidelines written to cover "behavior [that] is ongoing or continuous in nature."  *Id.*  Goncalves's alteration of a military document was a discrete event, as was the purchase of a home-theater system with the use of counterfeit bills.  Thus, the offenses do not "otherwise meet the criteria for grouping under" § 3D1.2(d).

Accordingly, we find no error in the district court's decision not to group the offenses for sentencing purposes.

### B.  No Error in Applying § 2B5.1(b)(5)

Goncalves next argues that the district court erred by applying the sentence enhancement in U.S.S.G. § 2B5.1(b)(5) to his conviction for passing

No. 09-10713

counterfeit notes, in violation of 18 U.S.C. § 472.[3]   This subsection of the Guidelines allows for a two-level increase in a sentence "[i]f any part of the offense was committed outside the United States."  U.S.S.G. § 2B5.1(b)(5).

Goncalves argues that the district court erred in two ways when applying § 2B5.1(b)(5).  First, he contends that the district court erred as a matter of law by applying § 2B5.1(b)(5) to his conviction under 18 U.S.C. § 472 because the Guideline applies only to convictions under 18 U.S.C. § 470.  Alternatively, he argues that there is insufficient evidence from which to find that part of the relevant conduct took place outside the United States.  We find no merit in either contention.

### 1. No Legal Error

Goncalves first argues that the district court erred as a matter of law by applying § 2B5.1(b)(5) to his conviction under 18 U.S.C. § 472.  This is because, Goncalves asserts, the enhancement applies only to international counterfeiting offenses under 18 U.S.C. § 470.[4]   Specifically, Goncalves points to the

---

[3] That statute provides:

Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 472.

[4] This statute provides:

A person who, outside the United States, engages in the act of--

> (1) making, dealing, or possessing any counterfeit obligation or other security of the United States; or

> (2) making, dealing, or possessing any plate, stone, analog, digital, or electronic image, or other thing, or any part thereof, used to counterfeit such obligation or security,

if such act would constitute a violation of section 471, 473, or 474 if committed within the United States, shall be punished as is provided for the like offense within the United States.

8

No. 09-10713

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, § 807(h), 110 Stat. 1214, 1310, which states that "the Commission shall amend the sentencing guidelines prescribed by the Commission to provide an appropriate enhancement of the punishment for a defendant convicted under section 470 of title 18 of such Code." Because AEDPA § 807(h) refers only to 18 U.S.C. § 470 and not to 18 U.S.C. § 472, Goncalves argues that any application of § 2B5.1(b)(5) goes beyond Congress's intent.

Under 28 U.S.C. § 994(a), the Sentencing Commission is vested with the authority to promulgate Guidelines that are "consistent with all pertinent provisions of any Federal statute." Accordingly, "Congress has delegated to the Commission 'significant discretion in formulating guidelines' for sentencing convicted federal offenders.'" *United States v. LaBonte*, 520 U.S. 751, 757 (1997) (quoting *Mistretta v. United States*, 488 U.S. 361, 377 (1989)). Based on this discretion and authority, "the Sentencing Commission has the power and the duty not only to interpret specific provisions of federal statutes regulating criminal punishment . . . but also to establish . . . standards designed to promote uniform and rational federal sentencing." *United States v. Lauer*, 148 F.3d 766, 769 (7th Cir. 1998) (citing, e.g., *Mistretta*, 488 U.S. at 367–70). Accordingly, we have held that the Commission may enact Guidelines that are not inconsistent with federal law but which are broader than a congressional directive when the Commission evinces a clear intent to do so. *See United States v. Dale*, 374 F.3d 321, 330 (5th Cir. 2004), *rev'd on other grounds*, 543 U.S. 1113 (2005). Goncalves has failed to show how applying § 2B5.1(b)(5) to 18 U.S.C. § 472 would be inconsistent with federal law or an abuse of the Commission's discretion. Thus we do not find the Commission exceeded its authority in doing so.

---

18 U.S.C. § 470.

9

Nevertheless, Goncalves further argues that our holding in *Dale* otherwise forecloses the application of § 2B5.1(b)(5) to 18 U.S.C. § 472. In *Dale*, we held that the Sentencing Commission had not exceeded its authority by including non-federally insured entities in a Guideline when the statute authorizing the Guideline's promulgation mentioned only federally insured financial institutions. *See Dale*, 374 F.3d at 330. In addition, because the Commission stated in the Background commentary of the Guideline that it was implementing "in broader form" the instruction to the Commission in the relevant statute, the Commission had "indicate[d] that [it was] exercising its authority to define an offense beyond a specific directive of Congress." *Id.* (citing *United States v. Soileau*, 309 F.3d 877, 881 (5th Cir. 2002)).

Goncalves argues that the Commission never demonstrated its intent to implement § 807(h) of AEDPA "in broader form" in the Background commentary to § 2B5.1(b)(5). Specifically, Goncalves points to the "Reason for Amendment" section of the Guidelines, which states that the amendment adding § 2B5.1(b)(5) to the Guidelines was to "address[] section 807(h) of [AEDPA]" and "to provide an appropriate enhancement for a defendant convicted of an international counterfeiting offense under 18 U.S.C. § 470." U.S.S.G. App. C. Amendment 554. Because the "Reason for Amendment" does not specifically identify 18 U.S.C. § 472, Goncalves argues that § 2B5.1(b)(5) should not apply to it.

We find Goncalves's arguments unconvincing. Both the plain language of the Guideline and its commentary demonstrate that the Commission clearly intended to include 18 U.S.C. § 472 as an offense subject to § 2B5.1(b)(5). First, the Guideline is titled "Offenses Involving Counterfeit Bearer Obligations of the United States," which includes 18 U.S.C. § 472 by its plain language. *See* § 2B5.1. Moreover, the § 2B5.1 commentary specifically states that the Guideline applies to 18 U.S.C. § 472. *See* U.S.S.G. § 2B5.1 cmt. It is well settled that a Guideline's commentary "is authoritative unless it violates the Constitution or

a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

Finally, while the Commission does not specifically state that it intends to implement AEDPA "in broader form" in its "Reason for Amendment," the absence of such language is not dispositive in determining how a Guideline should apply. The Seventh Circuit has noted that the circumstances surrounding the passage of § 2B5.1(b)(5) "suggest that the Commission knew that its enhancement applied to more sections of the United States Code than the section specifically noted by Congress." *United States v. Hernandez*, 325 F.3d 811, 815 (7th Cir. 2003). The court noted that in the "Reason for Amendment" in the Guideline's Background commentary, the Commission stated that it was "addressing" Congress's directive in § 807(h) of AEDPA when it promulgated § 2B5.1(b)(5), which evinced a broader legislative intent than simply "implement[ing]" the directive. *See id.* at 814–15 (quoting U.S.S.G. App. C, Amendment 554). Together with the plain language of the Guideline and its authoritative commentary, the court concluded that the Commission clearly intended § 2B5.1(b)(5) to apply to 18 U.S.C. § 472. *See id.*

We find the Seventh Circuit's reasoning persuasive. Accordingly, we hold the district court committed no legal error in applying § 2B5.1(b)(5) to Goncalves's conviction under 18 U.S.C. § 472.

### 2. No Factual Error

Goncalves next argues that there was insufficient evidence for the district court to find that part of the relevant conduct underlying his conviction took place outside of the United States, thus making § 2B5.1(b)(5) inapplicable. Goncalves acknowledges that it is his own admission that forms the basis for the district court's finding of fact on this issue. However, Goncalves argues that his repeated lies and misrepresentations to state and federal officials make him an unreliable witness, and he thus lacks sufficient credibility to be taken seriously.

No. 09-10713

We find that it is Goncalves's instant argument that cannot be taken seriously. "Credibility determinations are peculiarly within the province of the trier-of-fact . . . ." *United States v. Sarasti*, 869 F.2d 805, 807 (5th Cir. 1989). Consequently, we will not disturb a district court's credibility determination made at sentencing. *See id.* According to his PSR, Goncalves admitted to the police that he had conspired with someone outside the United States to use counterfeit bills to purchase items and then sell them at a profit. Goncalves has never denied that he made this admission, nor did he present any evidence showing where else the money may have come from. Moreover, the fact that the district court found other statements by Goncalves to be untrue does not foreclose a determination that in at least one situation – particularly where it appears to be against his own interest to do so – Goncalves told the truth. A defendant's own admission may be competent evidence when making a finding of fact, even when that defendant is also convicted of fraud. *See e.g.*, *United States v. Cothran*, 302 F.3d 279, 287-88 (5th Cir. 2002); *see also United States v. Puckett*, 505 F.3d 377, 387 (5th Cir. 2007).

Given Goncalves's own admission that part of his crime took place outside the United States, we do not find the district court's finding of fact on this issue to be clearly erroneous.

IV.  CONCLUSION

The district court's judgment and sentence are, in all respects, AFFIRMED.