# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 9, 2012

Lyle W. Cayce
Clerk

No. 11-20339

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEJANDRO PANTOJA-ROSALES,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CR-534-3

Before KING, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Alejandro Pantoja-Rosales and various co-defendants hijacked a group of illegal aliens from another smuggler and transported them to a stash house.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20339

Some of the co-defendants placed calls to the aliens' friends or family, demanding a fixed sum of money in exchange for their release. Pantoja-Rosales pleaded guilty of aiding and abetting the hostage-taking of one particular alien, Selvin Fuentes-Joya.

During sentencing, the district court applied a six-level enhancement for making a ransom demand. Pantoja-Rosales contests the application of that enhancement, arguing that it applies only where the original agreed-upon price is increased, that his co-defendants' actions are not attributable to him because the court did not make the proper particularized findings, and that the court improperly ruled on his objection at sentencing without letting his lawyer explain his position. We affirm.

I.

Pantoja-Rosales and co-defendants Heriberto Perez-Pinon, Israel Perez-Pinon, Eduardo Lopez-Vargas, Juan Romero-Trejo, and Edgar Ivan Guerrero were charged in an eight-count indictment with (1) conspiracy to commit hostage-taking in violation of 18 U.S.C. § 1203(a); (2) hostage-taking and aiding and abetting in violation of 18 U.S.C. §§ 2 and 1203(a); (3) conspiracy to conceal, harbor, and shield aliens from detection for private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (B)(i); and (4) concealing, harboring, and shielding aliens from detection for private financial gain in violation of § 1324(a)(1)-(A)(iii) and (B)(I) and (A)(v)(II). Pantoja-Rosales pleaded guilty of aiding and abetting the hostage-taking of Fuentes-Joya.

Fuentes-Joya entered the United States with a group of other illegal aliens, and a pickup truck picked them up. After riding in the bed of the truck for

No. 11-20339

a while, there were gunshots, and the truck sped up and eventually was stopped. Pantoja-Rosales hit the driver and pulled him out of the truck, then got into the driver's seat, told two of his accomplices to kill the driver, and drove off with the aliens.

Eventually, the truck had a flat tire, and the aliens were told to get out and go to a ranch on the side of the road. They were then taken to a stash house, and other co-defendants told the aliens' families or friends that they would be released after the families/friends sent the smugglers a certain amount of money. No evidence indicates that the amount of money demanded was more than what the aliens initially had agreed to pay for being smuggled into the United States.

At sentencing, the court adopted the presentence report ("PSR"), which recommended a base offense level of 32 and a six-level enhancement for making a ransom demand, a two-level enhancement for use of a dangerous weapon, a three-level increase for being a manager/supervisor, and a three-level decrease for accepting responsibility. The manager/supervisor enhancement was not applied. Pantoja-Rosales also objected to the ransom enhancement, but the district court overruled the objection without giving him the opportunity to respond. Pantoja-Rosales did not object.

The resulting guideline range was 210-262 months for offense level 37; the court sentenced Pantoja to 262 months and a five-year term of supervised release. Pantoja-Rosales did not object after the sentence was imposed.

II.

Even though Pantoja-Rosales's smuggling group may not have demanded

3

No. 11-20339

that the illegal aliens pay additional money beyond the price initially set, the district court still properly applied the enhancement for demanding a ransom. We review *de novo* whether a court misinterpreted the guidelines and committed legal error, but we review the application of the guidelines to the specific facts of the case for clear error. *United States v. Lyckman*, 235 F.3d 234, 237 (5th Cir. 2000). Section 2A4.1 of the United States Sentencing Guidelines does not define what qualifies as a ransom demand, and we have never determined whether the enhancement for demanding a ransom during a kidnaping applies to a smuggler who only demands the agreed-upon amount before releasing an alien. Despite the fact that the district court asserted during sentencing that the smuggling group had demanded increased fees to release the aliens, there is no evidence that any demand for an increased payment was made. We need not determine, however, whether a ransom enhancement applies every time a defendant holds illegal aliens until they pay their agreed-upon fees, because we can say more narrowly here that if a person other than the one whom the aliens agreed to pay for smuggling them refuses to release them until he receives payment, that qualifies as a ransom regardless of whether the amount is increased.

Section 2A4.1(b)(1) provides for a six-level sentence enhancement "[i]f a ransom demand . . . was made." Nothing in that language suggests that it does not apply to the aliens who initially asked to be transported. The language is written generally, applying any time a kidnaper demands a ransom, regardless of who is held.

We then turn to the plain meaning of "ransom": "a consideration paid or demanded for the release of someone or something from captivity." Merriam-Webster, http://www.merriam-webster.com. Even if the aliens already owed a

4

No. 11-20339

debt and consented to some transaction with their original smuggler, there was no agreement to pay, or debt owed to, these new kidnapers. The group of kidnapers to which Pantoja-Rosales belonged kidnaped the aliens from their initial driver, trapped them, and demanded that, before they would be released, fees were to be paid to them instead of to the original smugglers.

All other circuits to have addressed this question have gone even further, finding that anytime anyone, even those to whom the illegal aliens originally owed money, detains the aliens until money is paid, that satisfies the requirements for the ransom enhancement.[1] Thus, our decision is in accordance with all other circuits that have decided the issue.[2]

## III.

Although the district court should have made particularized findings that the acts of Pantoja-Rosales's codefendants were attributable to him, the implicit findings are clear enough to prevent reversal. A sentence adjustment based on third-party misconduct requires findings that the defendant agreed jointly to undertake criminal activity with those parties, that the misconduct was within the scope of that agreement, and that the third-party misconduct was foreseeable. *See United States v. Hammond*, 201 F.3d 346, 352 (5th Cir. 1999). The district court never expressly described how these elements were met. But because Pantoja-Rosales did not raise that objection to the court's explanation when it

---

[1] *See United States v. Sierra-Velasquez*, 310 F.3d 1217, 1221 (9th Cir. 2002); *United States v. Digiorgio*, 193 F.3d 1175, 1178 (11th Cir. 1999); *United States v. Escobar-Posado*, 112 F.3d 82, 83 (2d Cir. 1997).

[2] We express no disapproval of the broader proposition stated by these other circuits; we have not had a case, including this one, that properly presented the larger issue.

No. 11-20339

announced the sentence, we review his claim of lack of particularized findings for plain error.[3]

The requirements of plain error are (1) error; (2) that is plain; (3) that affects the defendant's substantial rights; and if those three prongs have been satisfied, this court has the discretion to remedy the error, but only if it (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005). Even if the district court's failure to provide express findings was error, it was not plainly so. Although a court must make the three findings listed above to hold a defendant accountable for his co-defendant's acts, those findings "need not be expressly made, but the meaning of the court's findings must be clear." *Hammond*, 201 F.3d at 351. Each finding was shown through evidence adopted during sentencing, so we cannot say it was plain error not to summarize the evidence succinctly when pronouncing sentence.

First, the court found that Pantoja-Rosales took charge at the "alien rip" where the aliens were taken from the initial driver. Leading the co-defendants to capture the illegal aliens shows that Pantoja-Rosales agreed jointly to undertake criminal activity with them. Second, the court adopted the PSR, in which one smuggled alien, BL-V, stated that the conspirators had discussed holding the aliens for higher ransom. Because Pantoja-Rosales was part of the group driving BL-V back from the alien rip when ransoming the aliens was discussed, the ransom was plainly part of the scope of the conspiracy to steal them. This is further

---

[3] *See United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009) (reviewing for plain error a claim that the district court did not properly explain the sentence, because even though defendant had objected to the substance of the sentence earlier, he did not object at sentencing to the way the sentence was explained).

No. 11-20339

supported by the PSR's finding that five calls made to family members of the smuggled aliens were made from Pantoja-Rosales's cell phone. Thus, the district court adopted evidence that clearly shows the ransoms were within the scope of the alien rip in which the court found Pantoja-Rosales engaged.

Finally, the ransom demands were foreseeable from the combination of the conversation overheard by BL-V and the fact a person should foresee that taking aliens and transporting them to a stash house makes it likely they will be held for ransom. Pantoja-Rosales and his co-conspirators did not rip the aliens from another smuggler out of the goodness of their hearts. Thus, the district court did not plainly err in believing it had found the required elements for third-party liability clearly enough that restating those elements was unnecessary.

IV.

Pantoja-Rosales claims the district court erred in considering testimony from other hearings in deciding to apply the ransom enhancement, because he was not given notice that the information would be used against him and was afforded no opportunity to challenge that evidence. Federal Rule of Criminal Procedure 32 requires the court to give notice of any information not in the PSR, FED. R. CRIM. P. 32(i)(1)(B), and to allow the attorneys to comment on matters relating to an appropriate sentence, FED. R. CRIM. P. 32(i)(1)(C).

Immediately after sustaining an objection to another enhancement, the district court denied Pantoja-Rosales's objection to the ransom enhancement, stating,

> The Defendant objects next to the six-level increase related to the hostage-taking issue. We've heard testimony now, evidence, at

least, you know, today and at the previous sentencings that, in fact, the Defendants did raise the price on the aliens in the stash house, in essence, charging a ransom for their return to their families. The objection is overruled.

Pantoja-Rosales had no opportunity to explain himself or contest whatever evidence the court had relied on from other hearings.

Because Pantoja-Rosales did not object during sentencing, we review the allegations of non-compliance with Rule 32 for plain error.[4] The court's actions in not providing notice and in ruling on the objection without letting Pantoja-Rosales's attorney speak were error, and that error was plain from Rule 32's text. Reversal on plain error still requires, however, that the error affect substantial rights: The defendant must show that it affected the outcome of the proceedings. *Mares*, 402 F.3d at 521.

Pantoja-Rosales cannot make that showing, because nothing his lawyer could have done would have prevented the application of the ransom enhancement. That enhancement applies regardless of whether extra money was demanded, and the district court, without looking to information from previous sentencings, had adopted evidence sufficient to demonstrate Pantoja-Rosales was accountable for his co-conspirators' ransom demands. Pantoja-Rosales has not shown he had any additional information that could have prevented the enhancement; he merely relies on the fact that the money demanded never increased beyond the original amount the illegal aliens had agreed to pay. Our above holding renders that argument ineffectual. Because Pantoja-Rosales failed to show anything helpful that his lawyer could have presented, and the

---

[4] *See United States v. Esparza-Gonzalez*, 268 F.3d 272, 274 (5th Cir. 2001) (applying plain-error review to alleged violation of Rule 32).

No. 11-20339

district court's reasoning was to assign Pantoja-Rosales a sentence at the upper end of the guideline range for his actions during the alien rip, Pantoja-Rosales has failed to show the error affected the outcome.

The judgment is AFFIRMED.