# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 20, 2014

Lyle W. Cayce
Clerk

No. 13-41033

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JULIO CESAR FERNANDEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:13-CR-19-5

Before SMITH, BARKSDALE, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Julio Cesar Fernandez appeals his conviction and sentence, arguing the district court erred while calculating his range of imprisonment under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). Fernandez argues the district court erred both by applying a six-level enhancement for making a ransom demand and by declining to apply a two-, three-, or four-level reduction for Fernandez's role in the offense. We AFFIRM.

## I.    Background

Fernandez, along with Roman Rivera Guillen, Israel Flores, Jose Molina, Bernadino Sanchez, and Alfonso Villasana, planned and executed a conspiracy to abduct an older man in an attempt to collect a drug debt from him. Guillen recruited Flores to abduct the man and showed Flores the location of the man's

residence on the day before the abduction. In turn, Flores enlisted the remaining co-conspirators, including Fernandez, to help him execute the abduction.

Flores, Fernandez, Molina, Sanchez, and Villasana drove to the apartment complex specified by Guillen,[1] and while Flores remained in the parking lot, Fernandez and the three others broke down the door of apartment number 110.[2] Inside, they found only nineteen-year-old Christian Gress ("C.G."), and quickly realized he was not their intended gray-haired target. Mistakenly assuming C.G. was the son of their intended target, Flores instructed his co-conspirators to abduct him. Fernandez, Molina, Sanchez, and Villasana forced C.G. into his own car at gunpoint, bound and blindfolded him, and transported him to a trailer at Flores's residence.

The next day, Fernandez and the other co-conspirators met Guillen at a car wash and handed C.G. over to a different group of kidnappers. C.G. was asked whether his family would pay ransom for his release. That same day, C.G.'s father, Daniel Gress, reported C.G.'s abduction to authorities. Daniel Gress told authorities he received phone calls from a Spanish-speaking male earlier that day demanding $700,000 and informing him that C.G. would be harmed if he did not pay the ransom. C.G.'s new abductors kept him overnight, then abandoned him on a dirt road. Guillen, Flores, Fernandez, Sanchez, Molina, and Villasana were arrested.

Fernandez was charged with: (1) one count of conspiracy to take a hostage in violation of 18 U.S.C. § 1203 ("Count One"); and (2) one count of hostage taking in violation of 18 U.S.C. §§ 1203 & 2. Fernandez pleaded guilty

---

[1] Guillen did not accompany his co-conspirators to the apartment complex.

[2] Guillen instructed Flores to kidnap a man from apartment number 10, but the co-conspirators mistakenly broke down the door of apartment number 110 in that same complex.

No. 13-41033

to Count One pursuant to a plea agreement with the Government.

Fernandez's Presentence Investigation Report ("PSR") calculated that his total offense level was 38, which included, among other things, a six-level enhancement pursuant to U.S.S.G. § 2A4.1(b)(1) for a ransom demand (the "Ransom Enhancement"). The PSR did not assess a two-, three-, or four-level reduction for a mitigating role in the offense under U.S.S.G. § 3B1.2 (a "Mitigating Role Reduction"). The PSR calculated Fernandez's criminal history category to be I. Fernandez's total offense level of 38 and criminal history category I resulted in a range of imprisonment of 235 to 293 months.[3]

In his written objections, Fernandez protested that the Ransom Enhancement should not apply because he "was unaware of any ransom demand made by other co-defendants," instead believing "the kidnapping was related to a debt owed by the father, not for a ransom demand." Therefore, he argued the ransom demand was not foreseeable to him and was outside the scope of the conspiracy. Fernandez also requested the district court give him a Mitigating Role Reduction because he lacked any knowledge of the ransom demand.

At sentencing, the district court overruled Fernandez's objections, finding that because Fernandez believed the kidnapping was related to a debt owed by the victim's father, the kidnapping was performed "to compel satisfaction of that debt in whole or in part." The district court applied the Ransom Enhancement, reasoning that the definition of ransom encompasses kidnapping a third party to compel payment of a debt. The district court also declined to apply a Mitigating Role Reduction, noting Fernandez was one of

---

[3] The PSR incorrectly stated in Part D that Fernandez's total offense level was 40 (or would be 39 if the district court applied an additional one-level decrease under U.S.S.G. § 3E1.1(b)). Thus, it incorrectly calculated his recommended range of imprisonment. However, the district court correctly calculated Fernandez's guideline range at sentencing.

the co-conspirators physically present to break into C.G.'s apartment and forcibly abduct him, and that Fernandez provided part of the "muscle in this kidnapping." The court therefore concluded Fernandez was a "general participant," not a minor participant.

After granting the Government's motion to increase the reduction for acceptance of responsibility from two to three levels pursuant to U.S.S.G. § 3E1.1(b), the district court determined that Fernandez's offense level was 37, his criminal history category was I, and his range of imprisonment was 210 to 262 months under the Guidelines. The district court sentenced Fernandez to 234 months of imprisonment and three years of supervised release. Fernandez timely appealed.

## II. Standard of Review

We review a district court's sentencing decision for reasonableness in a bifurcated review. *See United States v. Dominguez-Alvarado*, 695 F.3d 324, 327 (5th Cir. 2012). First, we determine whether the district court committed any significant procedural errors, such as "failing to calculate (or improperly calculating) the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Ortiz*, 613 F.3d 550, 554 (5th Cir. 2010). For properly preserved claims, we review the district court's interpretation and application of the Sentencing Guidelines *de novo*. *See United States v. Goncalves*, 613 F.3d 601, 604–05 (5th Cir. 2010); *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). A district court's findings of fact and its application of the Guidelines to those findings of fact are reviewed for clear error. *See Goncalves*, 613 F.3d at 605; *Norris*, 159 F.3d at 929. "A factual finding is not clearly erroneous as long as it is plausible in light of the record

No. 13-41033

read as a whole." *United States v. McMillan*, 600 F.3d 434, 457–58 (5th Cir. 2010) (citation and quotations omitted).[4]

### III.    Discussion

a.    Ransom Enhancement

Fernandez contends the district court erred in applying the Ransom Enhancement because it was unforeseeable to him that a ransom demand would be made on a third party.  Fernandez claims his relevant conduct should only include his intent to abduct the man who owed a debt, not the abduction of C.G., a third party, and ransom demands later made to C.G.'s father.

We conclude that the Ransom Enhancement properly applies to Fernandez.  We have not explicitly defined the term "ransom" in U.S.S.G. § 2A4.1(b)(1) in a published opinion.  In an unpublished opinion, we interpreted the term according to its plain meaning to denote "'a consideration paid or demanded for the release of someone or something from captivity.'"  *United States v. Pantoja-Rosales*, 494 F. App'x 453, 456 (5th Cir. 2012) (unpublished) (quoting Merriam–Webster, http://www.merriam-webster.com).[5]  We adopt that definition of ransom today, and agree with our sister circuits that "the ransom enhancement applies anytime a defendant demands money from a third party for a release of a victim, regardless of whether that money is already owed to the defendant."[6]  *United States v. Sierra-Velasquez*, 310 F.3d

---

[4] The second step involves analyzing the substantive reasonableness of the sentence, but Fernandez does not challenge this aspect of his sentence.

[5] Although *Pantoja-Rosales* is not "controlling precedent," it "may be [cited as] persuasive authority."  *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

[6] Additionally, we agree with the Second Circuit that "neither logic nor policy supports appellant's position. We provide formal, peaceful means for legitimate debts to be collected in part at least so that resort to force can be prohibited. The fact that appellant's claim for the money was not legitimate—the debt was clearly not a lawful one—hardly justifies the use of force." *United States v. Escobar-Posado*, 112 F.3d 82, 83 (2d Cir. 1997) (per curiam).

1217, 1221 (9th Cir. 2002); *see also Escobar-Posado*, 112 F.3d at 83 ("[T]here is nothing in the word's ordinary usage—a consideration paid or demanded for the redemption of a captured person—that precludes a ransom from consisting of a demand for a sum that the kidnapper believes is owed to him." (internal quotation marks omitted)); *United States v. Digiorgio*, 193 F.3d 1175, 1178 (11th Cir. 1999) (employing a nearly identical definition as that used in *Escobar-Posado*). Thus, Fernandez's belief that he and his co-conspirators would demand repayment of a debt is a sufficient ground to apply the Ransom Enhancement.

Fernandez's argument that we should apply the rule of lenity in defining ransom also lacks merit under any standard of review.[7] Fernandez asks us to "narrow its reach by requiring that payment demands communicated to a third party be reasonably foreseeable at the time the hostage is taken." Even applying this definition, though, the Ransom Enhancement was appropriately applied given that Fernandez knew "payment demands" would be made, even if he did not know that the demands would involve C.G. rather than the debt of the intended target.[8] Acts taken by his co-conspirators in furtherance of the

---

[7] We consider Fernandez's new legal argument involving the rule of lenity for plain error. *See United States v. Cedillo-Narvaez*, 761 F.3d 397, 402 n.2 (5th Cir. 2014) (reviewing for plain error a legal argument first raised before this court regarding a sentencing enhancement, even though the defendant raised a factual challenge to the application of that same enhancement before the district court). We note that Fernandez's challenge would fail even if we reviewed his new argument *de novo*, since the ransom demand was foreseeable to Fernandez even under the standard he suggests.

[8] In any event, the term "ransom" is not ambiguous simply because neither the Guidelines nor a published opinion in this circuit defines it, and Fernandez does not pinpoint any ambiguity. *See generally State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC*, 751 F.3d 684, 691 (5th Cir. 2014) (noting "[a] term is not ambiguous just because it has not been more specifically defined," and finding the language at issue was "not unusual, technical, or otherwise unclear"); *United States v. Orellana*, 405 F.3d 360, 371 (5th Cir. 2005) (observing a court should employ the rule of lenity "only after other canons of construction have proven unsatisfactory in pursuit of a criminal statute's meaning" (internal quotation

jointly undertaken criminal activity demonstrate the foreseeability of the ransom demand and are relevant conduct for Fernandez's sentencing. *See* U.S.S.G. § 1B1.3(a)(1)(B). In sum, the district court properly applied the Ransom Enhancement to Fernandez because it was foreseeable when he participated in the kidnapping conspiracy that money would be demanded for the release of the victim. That it was the wrong victim and a different demand does not change the result.

b.    Mitigating Role Reduction

The Guidelines provide for a two-, three-, or four-level reduction in a defendant's offense level if the defendant was a minor or minimal participant in the offense. *See* U.S.S.G. § 3B1.2. Commentary on the Guidelines specifies that the decision of whether to apply these Mitigating Role Reductions "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. n.3(C). A minimal participant, eligible for a four-level reduction under § 3B1.2(a), includes "defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. n.4 (noting a "defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant"). A minor participant, eligible for a two-level reduction under § 3B1.2(b), encompasses "a defendant [who plays a part in committing the offense that makes him substantially less culpable than the average participant, and] who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5.

---

marks omitted)); *see also Pantoja-Rosales*, 494 F. App'x at 456. We interpret the term according to its plain meaning and need go no further.

No. 13-41033

Fernandez argues the district court erred in refusing to apply a Mitigating Role Reduction, implying that the district court impermissibly relied exclusively on the PSR,[9] claiming the district court "gave no explanation for its findings," and contending that Fernandez's role in the conspiracy was negligible. Fernandez argued before the district court that the court should apply the Mitigating Role Reduction because Fernandez was a minor or minimal participant in the offense. We review the district court's determination that Fernandez was not a minor or minimal participant for clear error. *See United States v. Garcia*, 242 F.3d 593, 597–98 (5th Cir. 2001) (noting a defendant has the burden to show he is entitled to a Mitigating Role Reduction and that this court reviews for clear error the "'sophisticated factual determination'" of whether a defendant is a minor participant). "'A factual

---

[9] Fernandez did not specifically argue before the district court that that the district court impermissibly relied exclusively on the PSR. Furthermore, Fernandez does not directly state in his appeal brief that the district court impermissibly relied exclusively on the PSR, nor does he provide any explanation or record citation to show the district court did so. *See* Def.'s Br. 15–17. Therefore, Fernandez has abandoned any argument about the district court's exclusive reliance on the PSR through inadequate briefing. *See, e.g.*, *United States v. Stalnaker*, 571 F.3d 428, 439–40 (5th Cir. 2009) (finding arguments waived for inadequate briefing where defendant included only a "laundry list of grievances" about how "cumulative error at trial violated her right to due process," but did not fully explain her arguments and often did not cite the record or relevant authority); *United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992) (noting that "[f]ailure of an appellant to properly argue or present issues in an appellate brief renders those issues abandoned"); Fed. R. App. P. 28(a)(8)(A).

In making its overall sentencing decision and in considering the Mitigating Role Reduction, Fernandez asked that the district court not consider a violent incident in which he was involved at a detention center. To the extent Fernandez's citation about exclusively relying on the PSR is meant to refer to reliance on information about the detention-center incident, Fernandez's argument fails. He has not briefed that argument and has failed to present the district court or this court with any information rebutting the PSR's version of events involving the detention center. *See Stalnaker*, 571 F.3d at 439–40; *United States v. Scher*, 601 F.3d 408, 413 (5th Cir. 2010) (noting that "[i]n making factual determinations at sentencing, the district court is entitled to rely upon the information in the PSR as long as the information bears some indicia of reliability" and that "[t]he defendant bears the burden of presenting rebuttal evidence to demonstrate that the information in the PSR is inaccurate or materially untrue"). As described in the body of this opinion, this court finds no clear error in the district court's refusal to apply a Mitigating Role Reduction. Among other things, the district court found Fernandez was a direct participant in the forcible kidnapping of C.G.

finding is not clearly erroneous as long as it is plausible in light of the record as a whole.'" *United States v. Jeffries*, 587 F.3d 690, 692 (5th Cir. 2009) (quoting *United States v. Brown,* 470 F.3d 1091, 1094 (5th Cir. 2006)). Finally, Fernandez did not object at sentencing that the district court gave an inadequate explanation for its findings; accordingly, this court reviews Fernandez's inadequate-explanation argument for plain error. *See, e.g.*, *United States v. Mondragon-Santiago*, 564 F.3d 357, 361–62 (5th Cir. 2009) (applying plain error review where a defendant failed to object before the district court that it provided an inadequate explanation for its sentence).

In explaining Fernandez's sentence and its decision not to apply the Mitigating Role Reduction, the district court committed no plain error that affects Fernandez's substantial rights. *See Mondragon-Santiago*, 564 F.3d at 361–62; *see also Puckett v. United States*, 556 U.S. 129, 135 (2009) (describing plain error review and noting "there must be an error or defect—some sort of [d]eviation from a legal rule" that is "clear or obvious" (internal citations and quotation marks omitted)). The district court gave a full and adequate explanation for its decision not to apply a Mitigating Role Reduction at sentencing.[10] It found Fernandez was a direct participant in the kidnapping as one of the men who personally broke into C.G.'s apartment and abducted him; he then was further involved in guarding C.G. at Flores's residence. Additionally, given Fernandez's admittedly direct participation in the forcible abduction of C.G., the district court's determination that Fernandez did not play a minor or minimal role in the offense is plausible in light of the record as

---

[10] Fernandez argues before this court that the district court "striking[ly] . . . gave no explanation for its findings, stating simply 'I just don't find that he was a minor participant. He was a general participant.'" Def.'s Br. 15 (quoting from the transcript of the sentencing proceedings). Fernandez's characterization of the district court's explanation is inaccurate. In fact, the district court gave a more lengthy explanation describing Fernandez's direct role in the offense and the fact that Fernandez "was the muscle in this kidnapping."

a whole.  *See McMillan*, 600 F.3d at 457–58; *see also* U.S.S.G. § 3B1.2, cmt. n.3(A) (2012) (describing the "range of adjustments [available to] a defendant who plays a part in committing the offense that makes him *substantially less culpable than the average participant*" (emphasis added)).

AFFIRMED.