# United States Court of Appeals
## For the First Circuit

No. 03-2387

UNITED STATES OF AMERICA,

Appellee,

v.

HENRY A. ALVAREZ-CUEVAS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Lynch, Lipez, and Howard,
Circuit Judges.

Robert M. Thomas, Jr., with whom Royston H. Delaney and Thomas & Associates were on brief, for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Senior Appellate Attorney, with whom H.S. Garcia, United States Attorney, and German A. Rieckehoff, Assistant United States Attorney, were on brief, for appellee.

June 30, 2005

**LYNCH**, **Circuit Judge**.  Defendant Henry Alvarez-Cuevas challenges the propriety of the application of the Sentencing Guidelines in his case and requests a remand for resentencing in light of the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005).  Although Alvarez-Cuevas did not preserve his Booker claim and so must meet the plain error standard under Booker, we have recognized that an error in interpretation or application of the Guidelines may suffice to warrant a Booker remand.  United States v. Antonakopoulos, 399 F.3d 68, 81 (1st Cir. 2005).  When Booker claims are made, the first two prongs of plain error analysis are satisfied: there was error and it was plain.

Alvarez-Cuevas argues there was just such a Guidelines error here, as to the proper interpretation of the Sentencing Guideline, USSG §2A4.1(b)(6), which controls sentences for the crime of hostage taking.

The crime of hostage taking, at the time defendant's crime was committed, was punished by a base offense level of 24, subject to enhancements.  That base offense level was required to be enhanced if one or more of seven factual scenarios occurred. The Guideline of interest states:

> If the victim is a minor and, in exchange for money or other consideration, was placed in the care or custody of another person who had no legal right to such care or custody of the victim, increase by **3** levels.

-2-

USSG §2A4.1(b)(6). The question presented, of first impression, is whether the enhancement in §2A4.1(b)(6) applies when a fellow conspirator in the hostage taking has retained the taken child in his or her custody and the consideration received is no more than the conspirator's expected share of the ransom. We conclude that the Guideline is not applicable to Alvarez-Cuevas, and so defendant has established a reasonable probability of receiving a lower sentence on remand, under Antonakopoulos, and thus we remand for resentencing in light of Booker.

## I.

On November 8, 2000, the defendant Alvarez-Cuevas, along with co-conspirators Manuel E. Murillo and José M. Fermín-López, entered the home of Pablo Morla-Hernández, armed with firearms. They forced Morla-Hernández and his six-year-old step-daughter into a car. They drove to Fermín-López's home in Carolina, Puerto Rico, and left the child there with Fermín-López and his wife, co-conspirator Luz Delia Collazo Ayala. Alvarez-Cuevas and others then took Morla-Hernández to a bar in Santurce, Puerto Rico, and demanded $500,000 for the safe return of Morla-Hernández's child. Morla-Hernández escaped from the bar and contacted the police.

Later that evening, Alvarez-Cuevas called Morla-Hernández and repeated his demand of $500,000 within three days for Morla-Hernández's step-daughter to be returned. The next day, November 9, 2000, Alvarez-Cuevas and his fellow co-conspirators agreed to

-3-

release the child for a smaller amount of money and some kilograms of cocaine. From November 9 until November 13, there were several telephone conversations between the co-conspirators, including Alvarez-Cuevas, and Morla-Hernández as to the delivery of the ransom. Some of these calls were made from Fermín-López's residence. On November 13, 2000, upon learning that federal agents were investigating the kidnapping, the co-conspirators took the child from Fermín-López's house, where she had been cared for by Fermín-López and Collazo, and released her unharmed in Ocean Park, in San Juan, Puerto Rico; no ransom was exchanged. The defendant, as well as the three named co-conspirators, were arrested shortly after.

## II.

On November 29, 2000, Alvarez-Cuevas was indicted for hostage taking, in violation of 18 U.S.C. § 1203(a) (Count I), and aiding and abetting the unlawful possession of a firearm during the commission of a violent crime, in violation of 18 U.S.C. § 924(c) (Count II). On August 7, 2002, Alvarez-Cuevas pled guilty to both counts. He was sentenced on August 29, 2003.

On Count I, the base offense level was 24, under USSG §2A4.1(a)(1). Alvarez-Cuevas then received two of enhancements: 1) a six-level enhancement under USSG §2A4.1(b)(1) because a ransom demand was made; and 2) a three-level enhancement under USSG §2A4.1(b)(6) because, as stated in the Presentence Report, "the

victim was a minor and, in exchange for money or other consideration, was placed in the care or custody of another person who had no legal right to such care or custody." He also received a three-level downward departure under USSG §3E1.1 for acceptance of responsibility.

Based on the resultant Offense Level of 30, and a Criminal History Category of I, Alvarez-Cuevas's Guidelines' range was 97 to 121 months' imprisonment for Count I. The district court sentenced him to 109 months' imprisonment on Count I, and to the mandatory minimum of seven years for Count II, see 18 U.S.C. § 924(c), to be served consecutively for a total prison term of 16 years and one month. The defendant did not object to any of the enhancements or the calculation of the Guidelines range at sentencing.

### III.

On appeal, Alvarez-Cuevas makes several arguments. He first argues that the district court erred in enhancing his sentence based on USSG §2A4.1(b)(6), because the facts of this case do not come within the plain language of the Guideline. Second, and relatedly, he argues in supplemental briefing that as a result of Booker and this court's decision in United States v. Antonakopoulos, 399 F.3d 68, 80 (1st Cir. 2005), the district court committed plain error in sentencing him according to a mandatory Guidelines system and as a result his sentence should be vacated

and remanded for resentencing in light of <u>Booker</u>.  Third, he argues that trial counsel's failure to object to the departure at sentencing constituted ineffective assistance of counsel.

The government charged this case as a hostage taking case under 18 U.S.C. § 1203, rather than as a kidnapping case under 18 U.S.C. § 1201.[1]  The key elements of § 1203 are: "[W]hoever . . . seizes or detains and threatens to kill, to injure, or to continue to detain another person in order to compel a third person . . . to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained . . . shall be punished . . . ."  18 U.S.C. § 1203.  Nonetheless, USSG §2A4.1 applies to hostage taking because that section covers "Kidnapping, Abduction, [and] Unlawful Restraint."  As a result, §2A4.1 covers sentencing for different crimes with different elements.

A.  <u>Sentencing Departure</u>

USSG §2A4.1(b)(6) states:

If the victim is a minor and, in exchange for money or other consideration, was placed in the care or custody of another person who had no legal right to such care or custody of the victim, increase by **3** levels.[2]

---

[1]Perhaps the government feared it could not meet the interstate commerce requirement of 18 U.S.C. § 1201.

[2]The version of USSG §2A4.1 in effect at the time of defendant's sentencing in its entirety reads:
**Kidnapping, Abduction, or Unlawful Restraint**
(a) Base Offense Level: **24**
(b) Specific Offense Characteristics
    (1)  If a ransom demand or a demand upon the government was

Alvarez-Cuevas argues that the enhancement was improper for two reasons: (1) the child was never "placed in the care or custody of another person who had no legal right to such care or custody,"

             made, increase by **6** levels.

    (2)  (A) If the victim sustained permanent or life-threatening bodily injury, increase by **4** levels: (B) if the victim sustained serious bodily injury, increase by **2** levels; or (C) if the degree of injury is between that specified in subdivisions (A) and (B), increase by **3** levels.

    (3)  If a dangerous weapon was used, increase by **2** levels.

    (4)  (A) If the victim was not released before thirty days had elapsed, increase by **2** levels.
(B) If the victim was not released before seven days had elapsed, increase by **1** level.
(C) If the victim was released before twenty-four hours had elapsed, decrease by **1** level.

    (5)  If the victim was sexually exploited, increase by **3** levels.

    (6)  If the victim is a minor and, in exchange for money or other consideration, was placed in the care or custody of another person who had no legal right to such care or custody of the victim, increase by **3** levels.

    (7)  If the victim was kidnapped, abducted, or unlawfully restrained during the commission of, or in connection with, another offense or escape therefrom; or if another offense was committed during the kidnapping, abduction, or unlawful restraint, increase to --
(A) the offense level from the Chapter Two offense guideline applicable to that other offense if such offense guideline includes an adjustment for kidnapping, abduction, or unlawful restraint, or otherwise takes such conduct into account; or
(B) **4** plus the offense level from the offense guideline applicable to that other offense, but in no event greater than level **43**, in any other case,
if the resulting offense level is greater than that determined above.

(c) Cross Reference
    (1)  If the victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply §2A4.1 (First Degree Murder).

because the enhancement refers to placing the victim in the custody of a third party, not one of the kidnappers; (2) because those who kept the child, namely Fermín-López and Collazo, were not paid money or other consideration to keep the child but rather merely expected to receive some of the proceeds of the ransom, the child was not placed in their custody "in exchange for money or other consideration."

The government contends that all the requirements for the §2A4.1(b)(6) enhancement were met here: (1) the victim was clearly a minor; (2) the child was placed in the custody of Fermín-López and Collazo (both co-conspirators) shortly after being kidnapped, and neither had legal right to that custody, and §2A4.1(b)(6) does not by its terms refer to third parties; and (3) this placement of the child was done in exchange for "consideration," in the form of an expected share of the ransom money.

The literal language of §2A4.1(b)(6), standing alone, does not define the precise behavior to which the enhancement is meant to apply. Where a Guideline's language does not give a clear answer, we turn to context and to relevant background, in the form of other expressions by the Commission or background statutes, for assistance. See United States v. Luna-Diaz, 222 F.3d 1, 4-6 (1st Cir. 2000).[3]

---

[3]The case law interpreting §2A4.1(b)(6) is sparse. We encountered only one reported case discussing the Guideline, United States v. Matthews, 225 F. Supp. 2d 893, 897 (N.D. Ill. 2002), and

The government argues that we should construe the Guideline to cover the defendant's conduct in this case because the Sentencing Commission has given courts an "express instruction to apply [§]2A4.1 broadly to conspiracy cases." The government cites, in support, Application Note 4 to USSG §2A4.1, which states, in part: "In the case of a conspiracy, attempt, or solicitation to kidnap, §2X1.1 (Attempt, Solicitation, or Conspiracy) requires that the court apply any adjustment that can be determined with reasonable certainty." However, §2X1.1 merely requires courts to apply enhancements in cases in which there is a reasonable certainty that the factual basis for the enhancement exists. It says nothing about what the text of §2A4.1(b)(6) means.

The legislative history sheds a bit of light. The §2A4.1(b)(6) enhancement is a result of an amendment to 18 U.S.C. § 1201, the crime of kidnapping (not hostage taking), which was passed as part of the Omnibus Crime Control Act of 1990. The amendment, Pub. L. No. 101-647, 104 Stat. 4819, was added to the bill late in the drafting stage, and there is little available legislative history.

---

this case is inapposite. In <u>Matthews</u>, the district court declined to apply the enhancement, requested by the government, because the child never left the custody of the sole kidnapper. <u>Id.</u> The court only briefly discussed the enhancement, found that this core element was not satisfied, and did not purport to interpret its precise meaning. <u>Id.</u>

The structure of the amendment provides some insight, however. The amendment added a new subsection to the kidnapping statute,[4] as a "[s]pecial rule for certain offenses involving children." The amendment directed the Sentencing Commission to amend the Guidelines for kidnapping to add the following specific offense characteristics if the victim is under eighteen and the offender is eighteen or older and not a close relative or legal guardian of the child:

> If the victim was intentionally maltreated (i.e., denied either food or medical care) to a life-threatening degree, increase by 4 levels; if the victim was sexually exploited (i.e., abused, used involuntarily for pornographic purposes) increase by 3 levels; if the victim was placed in the care or custody of another person who does not have a legal right to such care or custody of the child either in exchange for money or other consideration, increase by 3 levels; if the defendant allowed the child to be subjected to any of the conduct specified in this section by another person, then increase by 2 levels.

The Commission followed suit by passing USSG §2A4.1.

The amendment was geared to the crime of kidnapping, not hostage taking. Nonetheless, the Guideline applies to both crimes. The language also shows Congress's concern with kidnapping. The language in the amendment containing the enhancement for offenses involving children concerning "another person who does not have a

---

[4]The amendment was subsequently codified at 18 U.S.C. § 1201(g)(2) (1991). This subsection was repealed by Pub. L. No. 108-21, Title I, § 108(b), April 30, 2003, 117 Stat. 643. The Guideline, however, remains in force.

-10-

legal right to such care or custody of the child" parallels the exception to the enhancement where the offender is a parent or an individual having legal custody of the child.  See 18 U.S.C. § 1201(g)(1)(B)(ii)(I), (VII).  It is also consonant with the definition of the term "parent" in the kidnapping statute as not including a person whose "parental rights with respect to the victim . . . have been terminated by final court order."  Id. § 1201(h).  This language shows that Congress was concerned, inter alia, about the possibility of kidnappings by parents whose custodial rights had been terminated by court order.

This leaves us with the logic of the situation that the amendment and derivative Guideline were meant to address.  The enhancements self evidently are meant to increase the sentence in cases posing greater harm or greater potential harm to the victim, where that victim is a minor.

The language of §2A4.1(b)(6), and of the 1990 amendment, most easily fits a kidnap-for-hire situation,[5] where the child is kidnapped, by special order, to be turned over to the custody of a third party who has no custody rights and who has paid the kidnappers to do the job.  There, the minor, "in exchange for money or other consideration," is placed into the care of a third party who has no custody rights.  The third party, for example, may be a

_____

[5]Solicitation to kidnap is a separate crime, punishable under 18 U.S.C. § 373, and is dealt with in the Guidelines under USSG §2X1.1.

-11-

parent whose custodial rights have been terminated. It may also be someone who is childless but wants to raise a child, or, even more sadly, a house of prostitution. The motives for those who hire kidnappers are varied. It makes sense to add additional punishment for the kidnapper, who, in such situations, never intends to return the child to her original home. Under this interpretation, §2A4.1(b)(6) works as a counterpart to §2A4.1(b)(1), which enhances the penalty when ransom is demanded. In a kidnap-for-hire situation, ransom is not demanded; rather the kidnapper is paid to accomplish the task of placing the child in the care or custody of someone who has no legal right to such care or custody. If an enhancement is appropriate for a demand of ransom, then it is appropriate to have a parallel enhancement for a kidnap-for-hire. We think this is the most likely meaning of §2A4.1(b)(6).

Yet the language permits another interpretation, also not the situation here. The plain language of §2A4.1(b)(6), which deals with whether a minor, "in exchange for money or other consideration, was placed in the care or custody of another," does not specify in which direction the exchange of money or other consideration must go. Normally, one would expect the flow of money to go to the kidnapper. But it is possible, under this broad language, for the money to flow from the kidnapper. Another plausible reading of §2A4.1(b)(6) involves the ransom-demanding kidnapper, who in an effort to make it harder to find the victim,

pays a third party to keep and care for the child. The interest in resolving crimes without such impediments could easily be thought to justify additional punishments.

If, as the government contends, every conspirator to a kidnapping is subject to an enhancement because one or more of the kidnappers, expecting the share of the ransom money, cares for the child in the interim, then the distinction between this common kidnapping situation and the kidnap-for-hire situation (or hiding the child with a third party) would disappear, and it would render the "placed in the custody of another person" requirement a nullity.

Even more significantly, the government's interpretation of §2A4.1(b)(6) creates incentives to behavior by kidnappers which should be discouraged. The child does need someone to care for her during the period of the kidnapping. There should be no incentive for kidnappers to hide or even to abandon children (thus avoiding responsibility for their custody or care). Such children may fall into even greater harm's way before they are found. The 1990 amendment to 18 U.S.C. § 1201 giving rise to §2A4.1(b)(6) created incentives in the Guidelines for kidnappers to avoid mistreatment of children they hold in their care before the children are

returned.  It would be wrong to read it as creating incentives to do the opposite.[6]

Alvarez-Cuevas's sentencing range, based on an Offense Level of 30 and a Criminal History Category of I, was 97-121 months, and he was sentenced in the middle of that range, to 109 months' imprisonment.  If the §2A4.1(b)(6) enhancement had not been applied, Alvarez-Cuevas would have had an Offense Level of 27, which would have resulted in a sentencing range of 70-87 months. Thus, absent the enhancement, Alvarez-Cuevas would have been sentenced to 22-39 fewer months of imprisonment.  This difference in sentence, if not corrected, would cause Alvarez-Cuevas substantial prejudice and affect the fairness of judicial proceedings.[7]

We remand to the original sentencing judge for resentencing in light of Booker, 125 S. Ct. 738.  The entire sentence is, as a result, subject to reconsideration, not just the §2A4.1(b)(6) enhancement.  Other than the §2A4.1(b)(6) enhancement, which must be vacated, we express no view on whether there should

---

[6]Whether criminals are in fact motivated by incentives created by the Guidelines when they commit crimes is another matter entirely, of course.

[7]We do not delve into whether, in claims of Booker error as to Guidelines interpretation, defendant must also show, as in a pre-Booker world, that the error itself met the separate requirements that the error be plain.  The government chose not to reply to defendant's Booker argument and has not presented any such argument to us.

be any further change.[8]  See United States v. Mercado Irizarry, 404 F.3d 497, 503 (1st Cir. 2005).

The sentence is **vacated** and **remanded** to the sentencing judge for further proceedings in accord with this opinion.

---

[8]Our disposition renders moot the remaining issue in the appeal.