# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-41214

United States Court of Appeals
Fifth Circuit

**FILED**

July 30, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LUIS FERNANDO CEDILLO-NARVAEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, HAYNES, and GRAVES, Circuit Judges.

HAYNES, Circuit Judge:

Luis Fernando Cedillo-Narvaez ("Luis Cedillo") appeals the district court's entry of final judgment of sentence and conviction. We AFFIRM.

## I.    Background

Juan De Dios Cedillo-Narvaez ("Juan Cedillo") and Jose Angel Lopez ("Lopez") planned and organized a conspiracy to kidnap a group of undocumented aliens from an alien-smuggling organization in an attempt to extort monies from the family members of the undocumented aliens in exchange for their safe release. Juan Cedillo recruited his brother, Luis Cedillo, and others to participate in the conspiracy. Pursuant to that conspiracy, Lopez and other members of the conspiracy, but not Luis Cedillo, forcibly kidnapped 18 undocumented aliens from a stash house operated by the

No. 12-41214

alien-smuggling organization and transported them to the residence of Martha Quiroga ("Quiroga"). Quiroga was paid $500 for her assistance in caring for and feeding the undocumented aliens, which included J.A.M.N., a 14-year-old boy.  There is no evidence that Quiroga knew that the undocumented aliens were being held as hostages, and she was not prosecuted for any crime that would require such knowledge.

Thereafter, members of the conspiracy, including Luis Cedillo, held the undocumented aliens against their will, and contacted their family members with ransom demands.  The family members were told that their kidnapped relatives would be killed if they failed to pay.  In addition to making ransom demands, Luis Cedillo fed and guarded the undocumented aliens.  During these duties, Luis Cedillo carried a pellet gun in his waistband, which he used to intimidate the undocumented aliens. A few days after the kidnapping, a family member of one of the undocumented aliens contacted police investigators, and provided the police investigators with information that led them to Quiroga's residence, where they discovered the 18 undocumented aliens being held captive.  Luis Cedillo, Juan Cedillo, Lopez, and several other co-conspirators were arrested. Luis Cedillo was charged with: (1) one count of conspiracy to harbor aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), (a)(1)(A)(iii) & (a)(1)(B)(i); (2) three counts of harboring an alien for commercial advantage or private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), (a)(1)(A)(v)(II) & (a)(1)(B)(i); and (3) one count of conspiracy to hostage taking in violation of 18 U.S.C. § 1203(a) & 2 ("Count Five").  Luis Cedillo pleaded guilty to Count Five pursuant to a plea agreement with the Government.

2

No. 12-41214

Luis Cedillo's Presentence Investigation Report ("PSR") calculated that his total offense level was 42, which included:

 (a) a six-level enhancement pursuant to U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2A4.1(b)(1) (2011) for a ransom demand (the "Ransom Enhancement");

(b) a two-level enhancement pursuant to U.S.S.G. § 2A4.1(b)(3) for the use of a dangerous weapon (the "Dangerous Weapon Enhancement");

(c) a two-level enhancement pursuant to U.S.S.G. § 2A4.1(b)(6) for a minor victim (the "Minor Victim Enhancement"); and

(d) a two-level enhancement pursuant to U.S.S.G. § 3A1.1(b)(1) for a vulnerable victim (the "Vulnerable Victim Enhancement").

 The PSR also calculated Luis Cedillo's criminal history category to be I. As a result, it concluded that Luis Cedillo's range of imprisonment under the Sentencing Guidelines was 360 months to life.

Luis Cedillo filed written objections to the Ransom Enhancement and the Vulnerable Victim Enhancement, but did not object in writing to the Dangerous Weapon Enhancement or the Minor Victim Enhancement. At sentencing, the district court overruled Luis Cedillo's objections to the Ransom Enhancement and the Vulnerable Victim Enhancement. The district court increased the Minor Victim Enhancement to a three-level enhancement, but noted that its applicability "might be an appellate point to pursue." Cedillo did not object to or otherwise raise any concerns about its application at the sentencing hearing. The district court also granted the Government's motion to increase the reduction for acceptance of responsibility from two to three levels. After recalculation, the district court determined that Luis Cedillo's total offense level was 42 and his criminal history category was I, resulting in

3

a range of imprisonment of 360 months to life under the Sentencing Guidelines.

However, the district court agreed with Luis Cedillo that the application of this range of imprisonment would result in an unwarranted sentence disparity between him and his brother, Juan Cedillo; it therefore sentenced him to 180 months of imprisonment with no term of supervised release.[1] After final judgment was entered, Luis moved for leave to file a late appeal. The district court granted the motion, such that Luis Cedillo's appeal is considered timely.

## II.    Standard of Review

This court reviews a district court's sentencing decision for reasonableness in a bifurcated review. *See United States v. Dominguez-Alvarado*, 695 F.3d 324, 327 (5th Cir. 2012). First, the court must determine whether the district court committed any significant procedural errors, such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Ortiz*, 613 F.3d 550, 554 (5th Cir. 2010). For properly preserved claims, this court reviews the district court's interpretation and application of the Sentencing Guidelines *de novo*. *See United States v. Goncalves*, 613 F.3d 601, 604–05 (5th Cir. 2010); *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). A district court's findings of fact and its

---

[1] Juan Cedillo pleaded guilty to conspiracy to hostage taking in violation of 18 U.S.C. § 1203(a) & 2 and was sentenced to 180 months of imprisonment with no term of supervised release. However, at Luis Cedillo's sentencing, the Government noted that Juan Cedillo, unlike Luis Cedillo, cooperated in the investigation or prosecution of others.

application of the Sentencing Guidelines to those findings of fact are reviewed for clear error.  *See Goncalves*, 613 F.3d at 605; *Norris*, 159 F.3d at 929.  A factual finding is "not clearly erroneous as long as it is plausible in light of the record read as a whole."  *United States v. McMillan*, 600 F.3d 434, 457–58 (5th Cir. 2010) (quotations and citation omitted).

If the court finds no procedural error, it then reviews the substantive reasonableness of a district court's sentencing decision for abuse of discretion, assuming the claim has been properly preserved.  *See Ortiz*, 613 F.3d at 554; *Dominguez-Alvarado*, 695 F.3d at 327.  This reasonableness inquiry "must be guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a)."  *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006) (citation omitted).  A sentence outside the Sentencing Guidelines "unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors."  *Id.* at 708 (citations omitted).

If, however, a defendant has failed to properly preserve a sentencing error, this court reviews the reasonableness of the district court's sentencing determination only for plain error.  *See United States v. Ruiz*, 621 F.3d 390, 398 (5th Cir. 2010); *Dominguez-Alvarado*, 695 F.3d at 327; *see also* FED. R. CRIM. P. 52(b).  In such circumstances, the court may correct the sentencing determination only if:  (1) there is error; (2) it is plain; and (3) it affects substantial rights.  *See United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012)(en banc).  If these three prongs are met, then we have the discretion to remedy the forfeited error, but we should not exercise that discretion unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *United States v. Olano*, 507 U.S. 725, 732

No. 12-41214

(1993) (quotations and citation omitted) (alteration in original); *see also Johnson v. United States*, 520 U.S. 461, 469–70 (1997).

## III.     Discussion

a.     Ransom Enhancement

Luis Cedillo asserts that the district court erred in applying the Ransom Enhancement because a ransom demand is an included characteristic of the offense enumerated in Count Five.    He maintains that this resulted in impermissible "double counting," raising his total offense level under the Sentencing Guidelines by six levels.

We conclude that the district court did not plainly err in applying the Ransom Enhancement to Luis Cedillo.[2]    A demand for ransom is not an element of the offense of conspiracy to hostage taking under 18 U.S.C. § 1203. The elements of the offense of hostage taking are: (1) the seizure or detention of another person; (2) a threat to kill, injure or continue to detain that person; and (3) with the purpose of compelling a third person or government entity to act in some way.  *See United States v. De Jesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005); *see also* 18 U.S.C. § 1203(a).  Conspiracy to commit that offense "requires direct or indirect agreement to commit hostage taking, knowledge

---

[2] The parties dispute whether we should review this issue and the Vulnerable Victim Enhancement issue *de novo* or for plain error.  Although Luis Cedillo objected to the imposition of the Ransom and Vulnerable Victim Enhancements before the district court, he only objected to the factual predicate; he did not make the legal argument he now advances. Because Luis Cedillo failed to raise these legal arguments before the district court, we review the application of these enhancements for plain error.  *See Dominguez-Alvarado*, 695 F.3d at 327–28 (applying plain error review where a defendant "failed to raise his claim of error in a manner that could have placed the district court on notice of the error he now asserts"); *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009) ("A party must raise a claim of error with the district court in such a manner so that the district court may correct itself and thus, obviate the need for our review." (citation and quotations omitted)).  However, even if we were to review these issues *de novo*, we would conclude that the district court did not err.

that the purpose of the agreement was unlawful and joinder in the agreement to further its unlawful purpose." *De Jesus-Batres*, 410 F.3d at 160. Luis Cedillo asserts that the third element of the offense of hostage taking under 18 U.S.C. § 1203 is equivalent to a ransom demand, but we have previously rejected that argument, and concluded that "[a] ransom demand is not an element of the offense under 18 U.S.C. § 1203." *United States v. Rivera-Benito*, 136 F. App'x 690, 691 (5th Cir. 2005) (unpublished).[3] We are persuaded by our holding in *Rivera-Benito*: "Because the fact of a ransom demand is not taken into account by the base offense level set forth for that offense at § 2A4.1(b)(1), there was no impermissible double counting."[4] *Id.*

b.    Vulnerable Victim Enhancement

Luis Cedillo also contends that the district court erred in applying the Vulnerable Victim Enhancement because the illegal status of the undocumented aliens in this case was already "incorporated in the offense guideline."[5] U.S.S.G. § 3A1.1 cmt. n.2.

---

[3] "An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006).

[4] Even if a demand for ransom was an element of the offense, Luis Cedillo's argument would nonetheless fail because double counting is not prohibited here. "[D]ouble counting is prohibited only if the particular guidelines at issue specifically forbid it." *United States v. Barraza*, 655 F.3d 375, 384 (5th Cir. 2011) (quotations omitted); *see also United States v. Godfrey*, 25 F.3d 263, 264 (5th Cir. 1994). While the Sentencing Guidelines forbid "double counting" for certain enhancements, § 2A4.1 contains no such prohibition. *See*, *e.g.*, U.S.S.G. § 3A1.1 cmt. n.2; U.S.S.G. § 2C1.1 cmt. n.6. Luis Cedillo cites several cases in which this court concluded that the district court had engaged in impermissible "double counting," but each of these cases involved "double counting" specifically prohibited by the Sentencing Guidelines. *See*, *e.g.*, *United States v. Medina-Argueta*, 454 F.3d 479, 482–83 (5th Cir. 2006) (concluding that district court's application of § 3A1.1 was impermissible double counting).

[5] The Government argues that Luis Cedillo waived his objection to the application of the Vulnerable Victim Enhancement because he failed to renew his written objection at the sentencing hearing. However, this court has previously rejected this precise argument. In *Bender v. Brumnley*, 1 F.3d 271 (5th Cir. 1993), the defendants argued that the plaintiff had failed to preserve an issue for appeal despite filing a written objection, because "he did not lodge oral on-the-record objections." *Id.* at 277. We concluded that the plaintiff's failure to

No. 12-41214

We conclude that the district court did not plainly err in applying the Vulnerable Victim Enhancement. Section 3A1.1(b)(1) of the Sentencing Guidelines provides: "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels." "Vulnerable victim" is defined as a victim of the offense of conviction "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2. This enhancement should not be applied "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline." *Id.*

Luis Cedillo argues that the district court plainly erred in applying the Vulnerable Victim Enhancement based on the illegal status of the undocumented aliens. He cites a series of cases in which this court has held that, "[b]ecause an alien's illegal status is a prerequisite to the crime of alien smuggling, it is error for a district court to find unusual vulnerability based on that status." *Medina-Argueta*, 454 F.3d at 482; *see also United States v. Angeles-Mendoza*, 407 F.3d 742, 747–48 (5th Cir. 2005); *United States v. Dock*, 426 F.3d 269, 273 (5th Cir. 2005). These cases are inapposite because Luis Cedillo was convicted of conspiracy to hostage taking, not alien smuggling. An alien's illegal status is not a prerequisite to the offense at issue here, and that characteristic is not already accounted for in the base offense level. *Compare* 8 U.S.C. § 1324(a)(1)(A), *with* 18 U.S.C. § 1203(a); *compare* U.S.S.G. § 2L1.1 *with* U.S.S.G. § 2A4.1. In *Angeles-Mendoza*, we acknowledged that an undocumented alien's illegal status could be the basis for a "vulnerable victim" finding for offenses that do not necessarily involve illegal aliens:

renew his objection orally was "immaterial" and stated: "We recognize that error is preserved for appeal so long as the complaining party states his assertion to the trial court prior to the time when the court invites on-the-record objections." *Id.* (citation omitted); *see also Lang v. Tex. & Pac. Ry. Co.*, 624 F.2d 1275, 1279 (5th Cir. 1980).

No. 12-41214

> This is not to say that the inherent vulnerability of smuggled aliens may never be used as a qualifying vulnerability for purposes of a § 3A1.1 upward adjustment; other crimes that do not necessarily involve smuggled aliens might involve more depravity and thus might render the defendant eligible for the adjustment where the crime is directed toward aliens to take advantage of their inherent vulnerabilities.

407 F.3d at 748 n.7; *see also United States v. Garza*, 429 F.3d 165, 173 (5th Cir. 2005) ("[N]one of the offenses at issue here . . . necessarily involve undocumented aliens. The status of Garza's victims as undocumented aliens was not taken into account by the base-level offense and consequently would not be an improper consideration under *Angeles-Mendoza*."); *United States v. Sierra-Velasquez*, 310 F.3d 1217, 1220 (9th Cir. 2002)(noting that "the crime of hostage taking is not limited to taking aliens as hostages"). Because the status of the hostages was not included in the base offense level, we conclude that the district court did not plainly err in determining that the undocumented aliens were "vulnerable victims" under § 3A1.1(b)(1) based on their illegal status.

c.     Minor Victim Enhancement

Luis Cedillo further argues that the district court erred in applying the Minor Victim Enhancement because that enhancement does not apply "when a *fellow conspirator* in the hostage taking has retained the taken child in his or her custody and the consideration received is no more than the conspirator's expected share of the ransom." *United States v. Alvarez-Cuevas*, 415 F.3d 121, 122 (1st Cir. 2005)(emphasis added).

The parties dispute the standard of review for this enhancement. Although the district court in passing stated that "this might be an appellate point to pursue," it is undisputed that Luis Cedillo never objected to the application of this enhancement. He did not provide the analysis and cases now presented to our court to the district court. Luis Cedillo's argument that

the earlier presentation of this issue at the separate sentencing hearing of his brother preserved the issue is unavailing as such an objection by a different defendant in a prior proceeding "is not relevant nor is it an acceptable method of preserving an issue for appellate review." *United States v. Triplett*, 922 F.2d 1174, 1183 (5th Cir. 1991). The purpose of the plain error rule is "to enforce the requirement that parties object to errors at trial in a timely manner so as to provide the trial judge an opportunity to avoid or correct any error, and thus avoid the costs of reversal." *United States v. Guerrero-Robledo*, 565 F.3d 940, 946 (5th Cir. 2009) (citation and quotations omitted).  Because Luis Cedillo "did not truly afford the district court an opportunity to correct" the purported error, we review this issue for plain error.  *Id.*  However, even if we were to review this issue *de novo*, it would not change the outcome.

We conclude that the district court did not plainly err in applying the Minor Victim Enhancement.  It is well established that this court's "interpretation of the Sentencing Guidelines is subject to the ordinary rules of statutory construction." *United States v. Carbajal*, 290 F.3d 277, 283 (5th Cir. 2002) (citation omitted).  If the language of the particular guideline at issue is unambiguous, "our inquiry begins and ends with an analysis of the plain meaning of that language."  *Id.*  Section 2A4.1(b)(6) of the Sentencing Guidelines provides: "[i]f the victim is a minor and, in exchange for money or other consideration,[6] was placed in the care or custody of another person who had no legal right to such care or custody of the victim, increase by 3 levels." This language unambiguously applies to this case:  (a) J.A.M.N. is a minor; (b) J.A.M.N. was placed in the care[7] or custody of Quiroga, who had no legal right

---

[6]  The concurring opinion construes this "consideration" very narrowly. We see nothing in the guideline or commentary that supports such a narrow interpretation.

[7]  At the very least, it cannot be considered "plain" that the term "care" excludes the care that Quiroga gave, nor does it appear "plain" that the guideline means "exclusive" care

to such care or custody; and (c) Quiroga was paid $500 for her assistance in caring for and feeding the undocumented aliens, including J.A.M.N.

Luis Cedillo argues that the Minor Victim Enhancement is inapplicable, citing *Alvarez-Cuevas*, which held that the Minor Victim Enhancement does not apply "when a fellow conspirator in the hostage taking has retained the taken child in his or her custody and the consideration received is no more than the conspirator's expected share of the ransom." 415 F.3d at 122. However, this case is factually distinguishable from *Alvarez-Cuevas*. Here, Quiroga was not a charged co-conspirator in conspiracy to hostage taking;[8] in fact, there is no indication that Quiroga was even aware that J.A.M.N. was being held as a hostage. Moreover, Quiroga was not compensated with an expected share of the ransom; rather, she was paid $500 to care for and feed the undocumented aliens, including J.A.M.N., at her residence. *Alvarez-Cuevas* is therefore inapplicable here. We conclude that, under the specific factual circumstances of this case, the district court did not plainly err in applying the Minor Victim Enhancement.

d.    Reasonableness

Luis Cedillo finally argues that the district court's sentence of 180 months of imprisonment was substantively unreasonable.

---

or custody as suggested by the concurring opinion. Whatever the policy considerations underlying this guideline, we look to the plain language of the guideline and conclude that the district court did not plainly err in applying it.

[8] Unlike Juan Cedillo, Luis Cedillo, and Lopez, Quiroga was not indicted on conspiracy to hostage taking. She pleaded guilty to conspiracy to harbor aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), (a)(1)(A)(iii) & (a)(1)(B)(i).

No. 12-41214

We conclude that the district court did not plainly err in its sentencing decision, as it was not substantively unreasonable.[9] A district court is required to impose "a sentence sufficient, but not greater than necessary, to comply with" the purposes of federal sentencing, in light of the Sentencing Guidelines and other § 3553(a) factors. 18 U.S.C. § 3553(a); *see Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011). Similarly, the "reasonableness inquiry on appeal must be guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a)." *Smith*, 440 F.3d at 706. Luis Cedillo argues that his sentence is unreasonable because it reflects an unwarranted sentence disparity between him and many of his co-defendants. *See* 18 U.S.C. § 3553(a)(6). Specifically, he notes that, with the exception of his brother, his co-defendants were sentenced to between 24 and 120 months of imprisonment. Because he received neither an aggravating role adjustment pursuant to U.S.S.G. § 3B1.1 nor a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2, Luis Cedillo contends that he was an average participant in the offense, and should have been sentenced to an average sentence, or 72 months of imprisonment.

However, none of the other defendants, with the exception of Juan Cedillo who was also sentenced to 180 months of imprisonment, were convicted of conspiracy to hostage taking in violation of 18 U.S.C. § 1203(a) & 2. Rather, each of the other defendants were convicted of conspiracy to harbor aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), (a)(1)(A)(iii) & (a)(1)(B)(i). Section 3553(a)(6) "requires the district court to avoid only unwarranted disparities between similarly situated defendants nationwide, and it does not require the district court to avoid sentencing disparities between co-defendants who might not be similarly situated." *United States v. Guillermo Balleza*, 613 F.3d 432,

---

[9] We review this issue for plain error because Luis Cedillo failed to object to the reasonableness of his sentence before the district court. *See Ruiz*, 621 F.3d at 398; *Peltier*, 505 F.3d at 391–92.

No. 12-41214

435 (5th Cir. 2010). Luis Cedillo was not similarly situated to these co-defendants, because they had been convicted of different offenses. *See id.* ("[S]entence disparities between co-defendants who were convicted of different charges . . . are not unwarranted disparities under § 3553(a)(6).").

AFFIRMED.

No. 12-41214

JAMES E. GRAVES, JR., Circuit Judge, concurring:

Although I agree with the rest of the majority's analysis, I would hold that the district court plainly erred in applying the § 2A4.1(b)(6) enhancement. The enhancement applies "[i]f the victim is a minor and, in exchange for money or other consideration, was placed in the care or custody of another person who had no legal right to such care or custody of the victim." The majority finds the enhancement to be warranted because Luis Cedillo and his co-conspirators paid Martha Quiroga $500 to house and feed the hostages, including J.A.M.N., a minor. The presentence report explains that this money was "in exchange for the use of [Quiroga's] residence to harbor undocumented aliens and for her services to cook for the individuals for approximately two days."

I have two objections to the majority's affirmance of the enhancement on these facts. First, in my view, the only reasonable interpretation of § 2A4.1(b)(6) is that the defendant must *receive* money or consideration in exchange for placing a minor in the care of custody of some unauthorized person. Here, because Luis Cedillo and his co-conspirators received no money or other consideration for placing J.A.M.N. in anyone's care or custody, the enhancement is not applicable. Second, even assuming the enhancement would apply in a situation where a kidnapper or hostage-taker pays a third party to exercise "care or custody" over a minor victim, J.A.M.N. was never in the "care or custody" of Martha Quiroga.

I

"The Sentencing Guidelines are subject to the rules of statutory construction." *United States v. Rocha*, 916 F.2d 219, 243 (5th Cir. 1990). "[T]he common mandate of statutory construction [is] to avoid absurd results." *Waggoner v. Gonzales*, 488 F.3d 632, 638 (5th Cir. 2007). The guideline specifies that there must be an "exchange [of] money or other consideration," but, as the First Circuit has noted, "does not specify in which direction the

14

exchange of money or other consideration must go." *United States v. Alvarez-Cuevas*, 415 F.3d 121, 126 (1st Cir. 2005).

> The language of § 2A4.1(b)(6) . . . most easily fits a kidnap-for-hire situation, where the child is kidnapped, by special order, to be turned over to the custody of a third party who has no custody rights and who has paid the kidnappers to do the job. There, the minor, "in exchange for money or other consideration," is placed into the care or custody of a third party who has no custody rights. The third party, for example, may be a parent whose custodial rights have been terminated. It may also be someone who is childless but wants to raise a child, or, even more sadly, a house of prostitution.

*Id.* However, the literal language of the guideline would also apply to a kidnapper who hires a babysitter to watch a kidnapped child for an hour: the kidnapper pays money to the babysitter, and in exchange, the child is placed into the "care or custody" of the babysitter (who has no legal right to the care or custody of the child) .

In my view, it would be absurd to apply a three-level enhancement equally to both scenarios. The kidnapper-for-hire is clearly more culpable. For the same reasons that the guidelines punish kidnapping more harshly when a ransom demand is made, *see* § 2A4.1(b)(1), it makes sense that a defendant who kidnaps a child for monetary gain should be punished more harshly than a defendant who does so for reasons unrelated to monetary gain. However, it is difficult to understand why a defendant who kidnaps a child is deserving of an additional three-level enhancement simply for having paid someone to take care of the child. If anything, such a thing should be encouraged:

> The child does need someone to care for her during the period of the kidnapping. There should be no incentive for kidnappers to hide or even abandon children (thus avoiding responsibility for their custody or care). Such children may fall into even greater harm's way before they are found.

*Alvarez-Cuevas*, 415 F.3d at 127.   Accordingly, I would hold that the § 2A4.1(b)(6) enhancement is intended to apply only when the defendant *receives* money or other consideration in exchange for placing a minor in the care or custody of someone with no legal right.

## II

Even assuming the enhancement would apply in a situation where a kidnapper or hostage-taker pays a third party to exercise "care or custody" over a minor victim, it is not applicable here because J.A.M.N. was never in the "care or custody" of Martha Quiroga.  The term "care or custody" is not defined in § 2A4.1.  However, other guidelines use the terms "care" and "custody" in connection with offenses against minors, and the application notes for these guidelines are instructive.  An unrelated guideline dealing with sexual abuse of a minor, § 2A3.2(b)(1), provides an enhancement "[i]f the minor was in the custody, care, or supervisory control of the defendant."  The application notes explain that this enhancement "is intended to have broad application and is to be applied whenever the minor is entrusted to the defendant, whether temporarily or permanently.  For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement."  *Id.*, comment. (n.2); *see also* § 2G1.3(b)(1) (parallel enhancement in guideline for promoting prohibited sexual conduct with a minor).

As another court has noted, "[t]eachers, day care providers, and baby-sitters all act *in loco parentis*."  *United States v. Brooks*, 610 F.3d 1186, 1201 (9th Cir. 2010).  "Care or custody," at least in the context of a minor, refers most naturally to some type of quasi-parental authority or control over the minor.  In this case, J.A.M.N. was traveling with his aunt, Irma Ferrera, who was attempting to bring him to his father in South Carolina.  J.A.M.N. was therefore in the "care or custody" of Ferrera.  Throughout the kidnapping

ordeal, it appears that J.A.M.N. was not separated from Ferrera. It is therefore at least arguable that J.A.M.N. was never placed in the "care or custody" of the kidnappers or any third party because he was never separated from the "care or custody" of his proper guardian.

Yet even if "custody" is understood in a broader sense, Quiroga clearly never exercised custody over J.A.M.N. The kidnappers (primarily Luis Cedillo) exercised physical custody over J.A.M.N. and the other hostages by confining them in Quiroga's house for two days under threat of violence, exerting authority over them, and controlling their movements. However, there is no suggestion that Quiroga personally exercised any authority or control over the hostages at all, and the mere fact that her house was used does not place the hostages in her "custody." Additionally, although Quiroga helped to take care of the hostages by cooking meals for them, this does not mean that they were "placed in her care." This would be an absurd interpretation of the guideline, as it would apply to a kidnapper who stops at a restaurant to buy a kidnapped child a hamburger.

### III

Although I would hold that the district court plainly erred in applying the § 2A4.1(b)(6) enhancement, I nevertheless conclude that this error did not affect Luis Cedillo's substantial rights. *See United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc). "A sentencing error affects a defendant's substantial rights if he can show a reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence." *United States v. Mudekunye*, 646 F.3d 281, 289 (5th Cir. 2011). The district calculated an offense level of 42 and a criminal history category of I, giving Luis Cedillo a recommended range of 360 months to life imprisonment. Absent the § 2A4.1(b)(6) enhancement, the offense level would have been 39, resulting in a recommended range of 262 to 327 months of

imprisonment.    However, Luis Cedillo was sentenced to 180 months of imprisonment, far below the correctly calculated minimum sentence. Moreover, the 180-month sentence was equal to that given to his brother, and the district court's sentence was clearly driven by the need to avoid an unwarranted disparity rather than by any particular guidelines factors. Because there is no reasonable probability that Luis Cedillo's sentence would have been lower under a correctly calculated guidelines range, his substantial rights have not been affected.  Accordingly, I join the majority in affirming Luis Cedillo's sentence.