# United States Court of Appeals for the Fifth Circuit

---

No. 23-40072

---

United States Court of Appeals
Fifth Circuit

**FILED**
February 6, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Jonathan Rolando Ortiz-De Leon,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:22-CR-716-1

---

Before Richman, *Chief Judge*, Stewart, *Circuit Judge*, and Hanks, *District Judge*.[*]

Per Curiam:[**]

On September 14, 2022, Jonathan Rolando Ortiz-De Leon pleaded guilty to hostage taking in violation of 18 U.S.C. § 1203. His charge originated in his kidnapping a four-year-old child and demanding a ransom from the child's father, as part of a larger business to smuggle persons over the United States-Mexico border. The district court sentenced Ortiz-De

---

[*] District Judge for the Southern District of Texas, sitting by designation.

[**] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-40072

Leon to 174 months of imprisonment. On appeal, he argues that the district court plainly erred by imposing a three-level sentencing enhancement under U.S.S.G. § 2A4.1(b)(6), which applies if "the victim is a minor and, in exchange for money or other consideration, was placed in the care or custody of another person who had no legal right to such care or custody of the victim." We affirm the district court's judgment.

# I

## A

Nayelie Fabiola Mejia-Lopez paid approximately $7,000 for her and her four-year-old son, L.Z.R.M., to be smuggled into the United States from Mexico. Mejia-Lopez and her son were housed in a stash house in the United States for eleven days with minimal food and no electricity or running water. The smugglers forcibly removed L.Z.R.M. from his mother at the request of the boy's father (Sabdi Minyamin Roblero-Bravo) who separately paid $2,500 to have his son transported to him. Approximately one week later, an individual involved with the smuggling enterprise told Roblero-Bravo that he would not release L.Z.R.M. until an additional $6,000 was paid, an amount that was later raised to $6,500.

Homeland Security Investigations (HSI) in Houston received information about L.Z.R.M. The same day, an undercover HSI agent posed as the boy's uncle and contacted the smuggler at the phone number Roblero-Bravo provided. The smuggler demanded a ransom payment of $6,500 and implied that if the money was not paid, L.Z.R.M. would be harmed.

The undercover HSI agent contacted the suspects and proposed to meet at an IKEA parking lot to exchange the ransom money for L.Z.R.M. The suspects agreed on the condition that they would first receive the cash, and L.Z.R.M. would be delivered later. Agents also tracked a phone, that proved to be Ortiz-De Leon's, to locate L.Z.R.M.

No. 23-40072

On the same day that agents tracked that phone, Ortiz-De Leon was seen driving a blue Nissan SUV with paper tags. Agents surveilled the vehicle, leading them to an apartment complex in Stafford, Texas. At the complex, the agents witnessed Ortiz-De Leon interacting with children, one of whom matched the description of L.Z.R.M. Agents then stopped Ortiz-De Leon's vehicle (in which Ortiz-De Leon and Carlos Oyervides were riding) in the apartment parking lot. The agents called the number they had been using to communicate with the suspects and heard a phone ring inside the vehicle. Subsequently, the agents arrested Ortiz-De Leon and Oyervides.

Following the arrest, officers from the Houston Police Department conducted a "knock and talk" at the apartment complex. While there, the officers spoke with Ortiz-De Leon's wife, Evelyn Serna, who consented to a search of the apartment. The officers found L.Z.R.M. in the apartment.

Ortiz-De Leon waived his *Miranda* rights and confessed, claiming this was the first time he was involved in taking a minor hostage. He admitted that he kept L.Z.R.M. in his home and that he was to be paid $1,000 for doing so. Ortiz-De Leon also admitted that he requested Roblero-Bravo pay $6,500 for the return of L.Z.R.M. However, he denied contacting the child's uncle (the undercover agent) on the day of his arrest and instead placed the blame on Oyervides.

Ortiz-De Leon outlined the events leading up to his arrest. He related that Oyervides and Gilbert Montez contacted him and requested that he pick up a child at a Houston Kroger. Ortiz-De Leon picked up L.Z.R.M. and was supposed to contact the child's father but could not reach him. Consequently, Ortiz-De Leon brought L.Z.R.M. home and placed him in the care of his wife. His wife was angry at him and informed him that he was committing a crime.

No. 23-40072

Ortiz-De Leon said that on the day of his arrest, Montez contacted him. In this conversation, Montez instructed Ortiz-De Leon not to deliver L.Z.R.M. because "law enforcement had disrupted his operations down south." Instead, Oyervides came to Ortiz-De Leon's home and said they would send someone else to deliver L.Z.R.M. Text messages from Ortiz-De Leon's phone indicate that he offered Carlos Catalan $200 to deliver L.Z.R.M.

**B**

A three-count indictment was filed against Ortiz-De Leon in the Southern District of Texas. For this appeal, the relevant count is Count 3: hostage taking in violation of 18 U.S.C. § 1203. Ortiz-De Leon entered into a plea agreement. In exchange for pleading guilty to Count 3, the Government agreed to (a) not oppose his request for full credit for his acceptance of responsibility and to (b) dismiss any remaining counts.

Subsequently, the Probation Office prepared a Presentence Investigation Report (PSR) for Ortiz-De Leon's sentencing. Ortiz-De Leon's base offense level was 32, pursuant to U.S.S.G. § 2A4.1(a). Several upward adjustments were assessed. First, a six-level increase pursuant to U.S.S.G. § 2A4.1(b)(1) was proposed because Ortiz-De Leon demanded a ransom. Second, a one-level increase pursuant to U.S.S.G. § 2A4.1(b)(4)(B) was proposed because Ortiz-De Leon did not release L.Z.R.M. before seven days had elapsed. Third, a three-level increase pursuant to U.S.S.G. § 2A4.1(b)(6) was proposed because "the victim is a minor and, in exchange for money or other consideration, was placed in the care or custody of another person who had no legal right to such care or custody of the victim." Fourth, a two-level increase pursuant to U.S.S.G. § 3A1.1(b)(1) was proposed because Ortiz-De Leon knew or should have known that a victim of the offense was a vulnerable victim. The total adjusted offense level was 44.

The probation officer recommended a one-level reduction, pursuant to U.S.S.G. Ch. 5, Pt. A, Commentary to Sentencing Table, cmt. n.2. The resulting total offense level was 43, and Ortiz-De Leon's criminal history category was I based on his prior conviction in 2015 for assault of a family member.

The district court did not fully adopt the PSR's recommendations. As Ortiz-De Leon accepted responsibility, the district court applied a three-level reduction pursuant to U.S.S.G. § 3E1.1(a) and (b). While that reduction should have brought the total to level 40, the district court incorrectly reported the number as 41. Next, the district court rejected the two-level vulnerable victim enhancement pursuant to U.S.S.G. § 3A1.1(b)(1), resulting in the total offense level 39. The district court overruled Ortiz-De Leon's objection to the one-level increase pursuant to § 2A4.1(b)(4)(B) because L.Z.R.M. was held longer than seven days.

At this point, the total offense level calculated by the district court was 39, and Ortiz-De Leon's criminal history category was I. The corresponding sentencing guidelines range was 262 to 327 months of imprisonment. The district court granted the Government's motion for downward departure but refused to "do more than what they recommend" because of the "very serious offense." The district court sentenced Ortiz-De Leon to 174 months of imprisonment. Ortiz-De Leon timely appealed.

## II

Ortiz-De Leon argues that the district court committed reversible error by applying the sentencing enhancement under U.S.S.G. § 2A4.1(b)(6). He contends that the enhancement does not apply and relies on the First Circuit's interpretation of § 2A4.1(b)(6) in *United States v.*

*Alvarez-Cuevas*,[1] which held that the enhancement is inapplicable "when a fellow conspirator in the hostage taking has retained the taken child in his or her custody and the consideration received is no more than the conspirator's expected share of the ransom."[2]

The Government argues that neither our circuit nor other circuits have adopted the First Circuit's interpretation of § 2A4.1(b)(6) in *Alvarez-Cuevas*. Second, the Government contends that the facts of this case "are easily distinguished from those of *Alvarez-Cuevas*." Third, the Government stresses that Ortiz-De Leon did not satisfy the fourth prong of plain error review.

Although Ortiz-De Leon filed several objections to the PSR, he did not object to the three-level enhancement pursuant to § 2A4.1(b)(6). Consequently, Ortiz-De Leon concedes that he failed to preserve a sentencing error and that plain error review applies.

Ortiz-De Leon must show (1) an error, (2) that is clear or obvious, and (3) that affected substantial rights.[3] A sentencing error affects a defendant's substantial rights if "he can show a reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence."[4] Even if the defendant makes such a showing, this court has discretion to correct the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."[5] Ortiz-De Leon has

_____

[1] 415 F.3d 121 (1st Cir. 2005).

[2] *Id*. at 122.

[3] *United States v. Brown*, 437 F.3d 450, 451 (5th Cir. 2006).

[4] *United States v. Mudekunye*, 646 F.3d 281, 289 (5th Cir. 2011) (per curiam).

[5] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)); *see also United States v. Escalante-Reyes*, 689 F.3d 415, 425 (5th

No. 23-40072

the burden to demonstrate that all four prongs are met,[6] and the Supreme Court has instructed that "[m]eeting all four prongs is difficult, 'as it should be.'"[7]

We agree with the Government that Ortiz-De Leon's reliance on the First Circuit's interpretation of § 2A4.1(b)(6) in *Alvarez-Cuevas* is insufficient. First, a single out-of-circuit case does not establish plain error. Ortiz-De Leon has not shown that any error on the part of the district court was "clear or obvious, rather than subject to reasonable dispute."[8] Moreover, in *United States v. Cedillo-Narvaez*,[9] our court declined to adopt the First Circuit's interpretation due to distinguishable facts. The "lack of binding authority is often dispositive in the plain-error context."[10] Although a defendant "need not show that the specific factual and legal scenario has been addressed," he "must at least show error in the 'straightforward applications of case law.'"[11] Ortiz-De Leon appears to request an extension

_____

Cir. 2012) (en banc) ("Additionally, we do not view the fourth prong as automatic if the other three prongs are met.").

[6] *United States v. Lavalais*, 960 F.3d 180, 186 (5th Cir. 2020) ("The defendant has the burden to demonstrate that all four prongs of plain error review are met.").

[7] *Puckett*, 556 U.S. at 135 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n. 9 (2004)).

[8] *Puckett*, 556 U.S. at 135.

[9] 761 F.3d 397, 405 (5th Cir. 2014) (noting that the case was factually distinguishable from *Alvarez-Cuevas*).

[10] *United States v. Gonzalez*, 792 F.3d 534, 538 (5th Cir. 2015); *see also United States v. Acuna-Ramirez*, 673 F. App'x 463, 464 (5th Cir. 2017) (per curiam) (unpublished) ("In the absence of binding precedent, or even clear analogous precedent, this court will not find plain error in this case.").

[11] *United States v. Vargas-Soto*, 700 F.3d 180, 182 (5th Cir. 2012) (quoting *United States v. Ellis*, 564 F.3d 370, 377 (5th Cir. 2009)).

of our case law, but "an error is not plain if it requires the extension of precedent."[12]

Second, the facts of the First Circuit's decision in *Alvarez-Cuevas* are distinguishable from the present case. In *Alvarez-Cuevas*, the defendant and his co-conspirators kidnapped a man and his six-year-old step-daughter, left the child with two other (indicted) co-conspirators, and demanded a $500,000 ransom for the safe return of the child.[13] Ultimately, the First Circuit held that the enhancement under § 2A4.1(b)(6) is inapplicable "when a fellow conspirator in the hostage taking has retained the taken child in his or her custody and the consideration received is no more than the conspirator's expected share of the ransom."[14]

Unlike *Alvarez-Cuevas* wherein the only compensation to the defendant was a share of the ransom money,[15] Ortiz-De Leon was supposed to receive $1,000 for keeping L.Z.R.M. in his home. This situation resembles *Cedillo-Narvaez* wherein the caretaker was not compensated with an expected share of the ransom but rather was paid a flat fee ($500) for her services.[16] Additionally, the minor in the present case was left in the custody of not only Ortiz-De Leon but also his wife. Ortiz-De Leon's case is factually distinguishable from *Alvarez-Cuevas*, and here as in *Cedillo-Narvaez*, the

---

[12] *Id.*; *see also Jimenez v. Wood Cnty.*, 660 F.3d 841, 847 (5th Cir. 2011) (en banc) ("Indeed, we have previously held that even where an argument merely requires extending existing precedent, the district court's failure to do so cannot be plain error.").

[13] *United States v. Alvarez-Cuevas*, 415 F.3d 121, 122 (1st Cir. 2005).

[14] *Id.*

[15] *Id.* at 124.

[16] *United States v. Cedillo-Narvaez*, 761 F.3d 397, 405 (5th Cir. 2014).

district court did not plainly err by applying the enhancement under § 2A4.1(b)(6).

## III

Lastly, Ortiz-De Leon's appeal fails because he has not made a showing for the fourth prong of plain error, namely that the purported error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."[17] As previously mentioned, the defendant bears the burden of demonstrating that all four prongs are satisfied.[18] Although Ortiz-De Leon mentions the fourth prong in passing, he does not explain how it applies to the facts of his case.

* * *

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

[17] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

[18] *United States v. Lavalais*, 960 F.3d 180, 186 (5th Cir. 2020) ("The defendant has the burden to demonstrate that all four prongs of plain error review are met."); *see also United States v. Andaverde-Tinoco*, 741 F.3d 509, 523 (5th Cir. 2013) ("Importantly, the burden is on the defendant to demonstrate that the error affects the fairness, integrity, or public reputation of judicial proceedings.").